## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**SIMON SHOKR (#709157)**                                **CIVIL ACTION NO.**

**VERSUS**                                                **20-488-BAJ-SDJ**

**JAMES LeBLANC, ET AL.**

### NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on December 14, 2020.

                             **SCOTT D. JOHNSON**
                             **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SIMON SHOKR (#709157)  CIVIL ACTION NO.

VERSUS  20-488-BAJ-SDJ

JAMES LeBLANC, ET AL.

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Complaint of Simon Shokr; for the following reasons, the undersigned recommends that this matter be dismissed with prejudice as legally frivolous and for failure to state a claim pursuant to 28 U.S.C. §§ 1915 and 1915A.

**I.  Background**

Shokr instituted this action against James LeBlanc and other unknown parties pursuant to 42 U.S.C. § 1983, alleging he is being subjected to unconstitutional conditions of confinement as a result of the COVID-19 virus,[1] in violation of the Eighth Amendment of the United States Constitution.[2]  Plaintiff seeks injunctive relief.

**II.  Law & Analysis**

   **A. Standard of Review**

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action or claim against a governmental entity or an officer or employee of a governmental entity that is frivolous, malicious, or fails to state a claim upon which relief may be granted. The statutes impose similar standards for dismissal.[3]  Both statutes are intended to afford the court the ability to separate those claims that may have merit from those that lack a basis in law or in fact.

---

[1] COVID-19 is also known as the Coronavirus and Sars-Cov-2.
[2] R. Doc. 1.
[3] Plaintiff was granted permission to proceed *in forma pauperis* on August 3, 2020 (R. Doc. 4), so both statutes apply.

A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"[4] A claim has no arguable basis in law if it is based upon a meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."[5] The law gives judges not only the authority to dismiss a claim that is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations.[6] Pleaded facts that are merely improbable or strange, however, are not frivolous for purposes of § 1915.[7]

To determine whether the complaint fails to state a claim under § 1915(e)(2)(B)(ii), courts apply the same standard used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[8] Accordingly, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[9] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

Dismissal may be made at any time, before or after service of process and before or after an answer is filed, if the court determines that the allegation of poverty is untrue; or the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[12]

---

[4] *Denton v. Hernandez*, 504 U.S. 25, 33-33 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989).
[5] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).
[6] *Denton,* 504 U.S. at 32.
[7] *Id.* at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).
[8] *Hart v. Harrison*, 343 F.3d 762, 763-64 (5th Cir. 2003).
[9] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[11] *Id.*
[12] *See Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

### B. Plaintiff has failed to state a claim regarding his conditions of confinement

Shokr's claim is properly classified as one challenging his conditions of confinement.[13] Shokr alleges that defendants are exposing Shokr "to the un-ending spread of COVID 19 VIRUS," as a result of Shokr being housed in a dorm that is allegedly overcrowded, which prevents social distancing.[14] Shokr contends that his placement in an overcrowded dormitory is "inflicting COVID 19 exposure, spread (u)pon [sic] plaintiff…."[15] Shokr further avers that defendants are inflicting torture upon him because Shokr "has a valid fear of his (death imminent COVID 19)."[16] Shokr has implied that COVID-19 poses a higher risk to him than other inmates due to pre-existing conditions and traumas; specifically, Shokr underwent open heart surgery in 1989, experiences shortness of breath and seizures, and has had lung cancer.[17] Shokr argues that LSP doctors were deliberately indifferent to his serious medical needs because, upon learning of the risk of COVID-19, they did not act to move Shokr to another facility that was not overcrowded where he could engage in social distancing to protect himself.[18] He further alleges LSP officials have done nothing to protect him from contracting COVID-19.[19]

---

[13] *See Blake v. Tanner*, 2020 WL 3260091, *2 (N.D. Tex. May 20, 2020). To the extent Plaintiff has attempted to bring a claim pursuant to the Americans with Disabilities Act ("ADA"), his claims fail. Plaintiff's allegations regarding his potential "ADA" claim consist only of vague statements, including that he is "ADA PROTECTED (DISABLED) via his MEDICAL DUTY STATUS" (R. Doc. 1, p. 10) and that physicians "Know This HOWEVER…NO 6 FT OVERCROWDED" (R. Doc. 1, p. 10). To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he has a qualifying disability; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and, (3) that such exclusion, denial of benefits, or discrimination is because of his disability. Plaintiff does not provide any details regarding his alleged disability, and this claim is clearly another attack on his conditions of confinement, not a true ADA claim. Further, Plaintiff cannot show that he is being denied benefits or that he was discriminated against. To the contrary, it appears he is being treated just as every other prisoner, and Shokr has not alleged facts to indicate he requires any special accommodation. *See McMurry v. Brown*, 2020 WL 3118567 (W.D. Mich. June 12, 2020) (dismissing an ADA claim brought by a prisoner regarding COVID-19).
[14] R. Doc. 1, pp. 8-9.
[15] R. Doc. 1, pp. 8-9.
[16] R. Doc. 1, pp. 8-9.
[17] R. Doc. 1, p. 9.
[18] R. Doc. 1, p. 10.
[19] R. Doc. 1, p. 12.

Shokr alleges he shows "persistant [sic] failures of LSP prison officials /re/ COVID 19," but Shokr has only provided this conclusory assertion.[20] He has failed to provide factual details to support any of his claims.[21] Shokr alleges that defendants have either reneged on their policy to stop or reduce the spread of COVID-19 or that they have no policy in place.[22]

In evaluating a conditions of confinement claim, it is appropriate to apply the "deliberate indifference" standard articulated in *Estelle v. Gamble*.[23] A prison official acts with deliberate indifference when he is both aware of facts from which an inference may be drawn that a substantial risk of serious harm exists to an inmate, and when the official in fact draws that inference.[24] However, "[i]f the plaintiff has properly stated a claim as an attack on conditions of confinement, he is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish because,…intent may be inferred from the decision to expose a detainee to an unconstitutional condition."[25] "A condition is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation, etc."[26] However, in some cases, a condition may be demonstrated through a pattern of acts or omission, but proving a pattern is a heavy burden that is rarely met.[27] "Further, to constitute impermissible punishment, the condition must be one that is 'arbitrary or purposeless' or, put differently, 'not reasonably related to a legitimate goal.'"[28] Finally, even if prison officials actually knew of a substantial risk to inmate health or safety, they may be found free from liability

---

[20] R. Doc. 1, p. 11.
[21] R. Doc. 1, p. 11.
[22] R. Doc. 1, p. 12.
[23] 429 U.S. 97 (1976). *See Wilson v. Seiter*, 501 U.S. 294 (1991).
[24] *Farmer v. Brennan*, 511 U.S. 825 (1994).
[25] *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009).
[26] *Id.*
[27] *Id.*
[28] *Id.* citing *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

if they responded reasonably to the risk, even if the harm ultimately was not averted.[29] As this Court and numerous other federal courts have recognized, the COVID-19 pandemic has caused a global crisis and poses extraordinary and unique public health risks, which are particularly pronounced in jails.[30] Further, prison officials are undoubtedly aware of the serious risk COVID-19 poses to the incarcerated population, including Shokr. Thus, the pertinent question becomes whether officials have responded reasonably to the risks presented by COVID-19.

Regarding the reasonableness of the LDPS&C's response to COVID-19, based on the complaint alone, two pertinent facts may be distilled from Shokr's allegations: 1) his dorm is overcrowded, preventing social distancing, 2) the masks provided were provided late and are "un-approved by the CDC."[31] The nature of these conclusory allegations alone would justify dismissal, and though leave to amend to give a pro se plaintiff an opportunity to state a claim is sometimes appropriate for pro se complaints, it is not so when leave to amend would be futile.[32] Here, any amendment would be futile. As illustrated below, a review of the case law in this circuit, as well as across the nation, supports dismissing Shokr's claims pursuant to 28 U.S.C. §§ 1915 and 1915A.[33]

The Northern District of Texas recently analyzed a case similar to the case at bar. The court, in *Blake v. Tanner*, confronted a set of facts wherein the plaintiff complained that the facility

---

[29] *Farmer*, 511 U.S. at 844 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").
[30] *See, e.g.*, *Blake v. Tanner*, Civil Action No. 20-1250, 2020 WL 3260091, *3 (N.D. Tex. May 20, 2020); *Gumns v. Edwards*, Civil Action No. 20-231, 2020 WL 2510248, *1 (M.D. La. May 15, 2020).
[31] R. Doc. 1, p. 15.
[32] *Wiggins v. La. State Univ. Health Care Servs. Div.*, 710 Fed.Appx 625, 627 (5th Cir. 2017); *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016).
[33] *See, e.g.*, *Arnold v. St. Clair County Intervention Center*, 2020 WL 4700812 (E.D. Mich. Aug. 13, 2020) (dismissing as frivolous claim of inmate who had not contracted COVID-19 that defendants denied masks to inmates and prevented social distancing); *Cummings v. Washington*, 2020 WL 2764364 (W.D. Mich. May 28, 2020) (dismissing as frivolous complaint regarding COVID-19, considering the measures that had been taken by the prison system to mitigate the spread of COVID-19, which measures are similar to those taken by the LDPS&C in this matter); *Blake v. Tanner*, Civil Action No. 20-1250, 2020 WL 3260091 (N.D. Tex. May 20, 2020); *Williams-Bey v. Smith*, Civil Action No. 20-828, 2020 WL 1954140, (N.D. Ohio Apr. 23, 2020);

5

in which he was housed refused to follow COVID-19 guidelines; specifically, as in this case, the plaintiff complained that staff refused to facilitate social distancing and complained regarding the wearing of masks.[34] The court found that the plaintiff had not put forth facts to indicate the defendants had responded unreasonably to the COVID-19 pandemic.[35]

In *Williams-Bey v. Smith*, another claim similar to that presented here was considered and dismissed as frivolous pursuant to 28 U.S.C. § 1915A.[36] The court therein noted its understanding of the plaintiff's legitimate concern regarding COVID-19 but found that his general allegations did not support a plausible inference that any defendant had failed to take reasonable measures presented by the coronavirus pandemic.[37] Here, Shokr has provided similar allegations to the aforementioned cases and nothing to indicate Defendants have responded unreasonably to the risks presented by COVID-19. Rather, Shokr indicates that, early on, officials prohibited visitation, canceled the spring rodeo, and took other steps to try to reduce the spread of the virus.[38] When the Court looks past the complaint towards the policies implemented by LDPS&C to respond to the risks presented by the coronavirus, the fact that plaintiff cannot state a claim herein becomes even clearer.

A review of the LDPS&C policies supports the conclusion that defendants have not acted unreasonably with respect to the threat posed by COVID-19.[39] The efforts the LDPS&C has taken

---

[34] *Blake v. Tanner*, Civil Action No. 20-1250, 2020 WL 3260091, *1 (N.D. Tex. May 20, 2020).
[35] *Id.* at *3-4.
[36] *Williams-Bey v. Smith*, Civil Action No. 20-828, 2020 WL 1954140, (N.D. Ohio Apr. 23, 2020).
[37] *Id.*, *2.
[38]

[39] This Court is permitted to take judicial notice of governmental websites, (*In re Katrina Canal Breaches Consol. Lit.,* 533 F.Supp.2d 615 (E.D.La.2008) ("The Fifth Circuit has determined that courts may take judicial notice of governmental websites." (quotation omitted))) and the Department of Public Safety and Corrections has posted on its website a summary of its efforts to respond to the threat of COVID-19. LDPS&C's policies for dealing with COVID-19 are available at https://doc.louisiana.gov/covid-19-information/. Further, courts have taken judicial notice of such evidence in cases dismissing claims pursuant to 28 U.S.C. §§ 1915 and 1915A. *See Tavares v. LaSalle Corrections*, Civil Action No. 17-289, 2018 WL 2452977 (W.D. Tex. May 31, 2018); *Blake v. Tanner*, Civil Action No. 20-1250, 2020 WL 3260091 (N.D. Tex. May 20, 2020). Thus, this Court may consider the LDPS&C policies regarding COVID-19 in determining the merits of the Shokr's claims.

to mitigate the spread of COVID-19 are extensive. The following is an illustrative list of measures taken by the LDPS&C to mitigate the spread of COVID-19. Visitation has been suspended, as well as volunteering, tours, programming, transfers between prisons, and transfers from the local level. Additionally, with respect to the Louisiana State Penitentiary, particularly, the Angola spring rodeo was canceled. All of these measures have been implemented in an effort to minimize movement. Specifically relating to Shokr's concerns regarding social distancing, the Court notes that the following measures are being taken, which are clearly to facilitate social distancing: dining and recreation time has been limited to service one dormitory or housing unit at a time, limited intakes are occurring, and each intake is screened and assessed for symptoms and then quarantined for 14 days before being placed in general population. Further, DOC employees are being screened daily before entering the facility, DOC work crews are working after hours to clean buildings, the LDPS&C has implemented ramped up daily disinfectant cleaning protocols at every prison facility, and personal protective equipment is being provided to all staff. Furthermore, free bars of soap are being issued to inmates in state prisons on an ongoing basis and ample hand sanitizer is available.

The Eleventh Circuit recently analyzed a claim challenging the conditions of confinement with respect to COVID-19 at a Florida detention center and, taking into account the measures taken in response to COVID-19, found that the plaintiffs were unlikely to succeed on the merits of their claim when analyzing their request for preliminary injunction. The court noted aptly as follows:

> We simply cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, the defendants here acted unreasonably by "doing their best." Because the defendants "act[ed] reasonably," they "cannot be found liable" under the Eighth Amendment.[40]

---

[40] *Swain v. Junior*, 961 F.3d 1276, 1289 (11th Cir. 2020).

7

The circumstance here is similar. The mere fact that social distancing is not perfectly attainable in a correctional setting and the fact that inmates did not receive masks as promptly and of the type Shokr would have preferred does not demonstrate that the named defendant or any other potential defendant is acting unreasonably with respect to the risks associated with the spread of COVID-19.

In fact, the response of the LDPS&C, as illustrated above, is not unreasonable.[41] The unique challenges presented in managing a pandemic in an institutional setting are abundantly evident, but in this case, Shokr has not shown that any official or entity has acted unreasonably. The sole named defendant, James LeBlanc, is the secretary of the LDPS&C, which as described above, has not acted unreasonably in responding to this novel crisis. Further, though Shokr complains that the masks provided are unapproved by the CDC, this argument is not persuasive. The CDC has only recommended cloth face masks, and other courts have dismissed as frivolous complaints regarding the quality of masks provided.[42] Similarly, that social distancing presents a challenge in the correctional setting has been recognized, and Shokr has not provided any facts to indicate the defendants are acting unreasonably with respect to social distancing. Shokr has not even alleged that the one named defendant or any potential defendant had the "authority, ability, and resources to change [Shokr's conditions of confinement] without endangering other prisoners"

---

[41] *See Cummings v. Washington*, 2020 WL 2764364 (W.D. Mich. May 28, 2020) (dismissing as frivolous complaint regarding COVID-19, considering the measures that had been taken by the prison system to mitigate the spread of COVID-19, which measures are similar to those taken by the LDPS&C in this matter).

[42] *See, e.g.*, *Blake v. Tanner*, Civil Action No. 20-1250, 2020 WL 3260091, *3 (N.D. Tex. May 20, 2020); *Bodnar v. Lake Cnty. Jail*, Civil Action No. 20-157, 2020 WL 1940742, *2 (S.D. Ind. Apr. 22, 2020) ("The CDC is recommending cloth face masks to preserve medical grade equipment for medical personnel. Thus, while Bodnar may prefer medical grade equipment to better protect himself, the decision to provide him with a lesser quality mask is consistent with current guidelines and in no way runs afoul of the Constitution.").

further supporting the undersigned's conclusion that this complaint should be dismissed for failure to state a claim.[43]

### C. The relief sought by Shokr is inappropriate

The sole relief sought by Shokr is to be released.[44] Such relief is not cognizable in an action brought pursuant to § 1983.[45] When seeking an immediate, earlier, or accelerated release from confinement, such an action must be pursued through a habeas corpus proceeding.[46] Thus, Shokr's request for accelerated release herein due to COVID-19 is not cognizable in this § 1983 action. However, if Shork were to bring these same claims in a habeas petition, he would fare no better, as Shokr has not alleged that he exhausted his state court administrative remedies prior to bringing suit, and exhaustion is required.[47]

Even if Shokr's claims were properly asserted in any action, several federal courts have considered arguments such as Shokr's "and have universally found that prisoners are not entitled to release or transfer based solely on generalized COVID-19 fears and speculation."[48]

---

[43] *See Williams v. Nevada*, 2020 WL 1876220 (D. Nev. April 15, 2020) (dismissing as frivolous Eighth Amendment claim where the plaintiff had only made vague and conclusory allegations that the prison was not equipped to handle COVID-19 and had not sufficiently alleged facts to demonstrate that any defendant was deliberately indifferent to the plaintiff's health; the court noted that being incarcerated without the ability to socially distance alone does not state a claim).

[44] *See* R. Doc. 1, p. 18.

[45] *See Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973) (wherein the United States Supreme Court held that a challenge by a prisoner to the fact or duration of his confinement and seeking an immediate or earlier release from that confinement must be pursued through a habeas corpus proceeding rather than in an ordinary civil rights action).

[46] *Id. See also Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998); *Cook v. Tex. Dept. of Criminal Justice Transitional Planning Dept.*, 37 F.3d 166, 168 (5th Cir. 1994) (finding claims that would entitle prisoner to accelerated release are not properly pursued in a § 1983 conditions of confinement case).

[47] *See*

[48] *See Newton v. Louisiana Department of Corrections*, 2020 WL 1869018, *2 (W.D. La. April 13, 2020) citing *United States v. Clark*, 2020 WL 1446895 at *3 (D. Kan. March 25, 2020); *United States v. Eberhart*, 2020 WL 1450745 at *2 (N.D. Cal. March 25, 2020); *Jackson v. Walz*, 2020 WL 1442641 (D. Minn. March 24, 2020); *Carter v. Santa Fe Adult Det. Ctr.* 2020 WL 1550888 (D.N.M. Apr. 1, 2020).

### D. Shokr has failed to state an equal protection claim

Turning to Shokr's equal protection claim, he has only alleged in a conclusory fashion that he is being discriminated against with respect to the processing of his grievances because he is Muslim.[49] Shokr alleges this discrimination is evidenced by the fact that officials have not responded to a grievance he filed.[50] "To state an equal protection claim, [a prisoner] must allege, *inter alia*, that similarly situated individuals have been treated differently and he must also allege purposeful or intentional discrimination."[51] Shokr's allegations are wholly conclusory, fail to provide facts regarding the treatment of similarly situated individuals, and fail to provide any facts to indicate purposeful or intentional discrimination. Shokr has failed to state an equal protection claim. Further, to the extent Plaintiff is merely dissatisfied with the processing time for his grievances, he also fails to state a claim, as Plaintiff has no right to have his administrative proceedings properly investigated, handled, or favorably resolved.[52]

### E. Plaintiff's claims regarding the practice of his religion are unexhausted

To the extent Shokr has attempted to supplement this complaint with the allegations in R. Doc. 6, those claims should be dismissed without prejudice for failure to exhaust. Pursuant to the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[53] The PLRA's exhaustion requirement is mandatory, and unexhausted claims may not be brought in court.[54] When a prisoner fails to exhaust his administrative remedies, he fails to

---

[49] R. Doc. 1, p. 13.
[50] R. Doc. 1, p. 13.
[51] *McKnight v. Eason*, 227 Fed.Appx. 356, 356 (5th Cir. 2007).
[52] *Mahogany v. Miller,* 252 Fed.Appx. 593, 595 (5th Cir. 2007).
[53] 42 U.S.C. § 1997(e)(a).
[54] *Jones v. Bock,* 549 U.S. 199, 211 (2007).

state a claim upon which relief may be granted [55] Generally, a prisoner's failure to exhaust administrative remedies is an affirmative defense under the PLRA, and prisoners "are not required to specially plead or demonstrate exhaustion in their complaints."[56] However, the United States Court of Appeals for the Fifth Circuit permits a district court to *sua sponte* dismiss a case for failure to state a claim, predicated on failure to exhaust, "if the complaint itself makes clear that the prisoner failed to exhaust."[57]

In Louisiana, an inmate must follow a two-step Administrative Remedy Procedure ("ARP") process to exhaust administrative remedies before filing suit in federal court. The ARP process is codified in the Louisiana Administrative Code under Title 22, Part I, § 325. An inmate initiates the ARP process by completing a request for administrative remedy or writing a letter to the warden. An ARP screening officer screens the inmate's request and either accepts the request or rejects it for one of the enumerated reasons. A request rejected during the screening process cannot be appealed to the second step. If a request is accepted at the screening level, the warden must respond on a first step response form within forty (40) days of receipt of the request (five days for PREA). An inmate dissatisfied with the first step response, may proceed to the second step of the ARP process by appealing to the Secretary of DOC. The DOC Secretary must issue a response within forty-five (45) days from the date the request is received using a second step response form. An inmate dissatisfied with the second step response may file suit. Whether or not a second-step response is received, once ninety days have passed from the initiation of the ARP process, unless an extension has been granted, the inmate may file suit.

---

[55] *Hicks v. Garcia*, 372 Fed. Appx. 557, 558 (5th Cir. 2010).
[56] *Jones*, 549 U.S. at 216.
[57] *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2014).

11

It is clear that the allegations contained within R. Doc. 6 are unexhausted. Shokr alleges that On September 15, 2020, an officer threatened to put Shokr in "lock-up" if the officer caught Shokr praying.[58] Plaintiff instituted this action on July 18, 2020, prior to the conduct complained of. Therefore, he could not have exhausted administrative remedies with respect to this incident prior to filing suit, and the claims contained therein should be dismissed without prejudice for failure to exhaust administrative remedies.

### F. The Court should decline the exercise of supplemental jurisdiction over any of Shokr's potential state law claims

Insofar as Shokr seeks to have this Court exercise supplemental jurisdiction over potential state law claims, this Court should decline to do so. A district court is authorized to decline supplemental jurisdiction over such claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[59] Since Shokr has failed to state a valid federal claim, it is appropriate for the Court to decline to exercise supplemental jurisdiction over any potential state law claims.

### G. Plaintiff's request for a temporary restraining order should be denied

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."[60] The decision whether to grant or deny a request for a preliminary injunction is within the sound discretion of the Court.[61]

---

[58] R. Doc. 6.
[59] 28 U.S.C. § 1367.
[60] *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations and quotations omitted). *See* also *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (preliminary injunctive relief "is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors");
[61] *See Allied Mlttg. Grp., Inc.*, 878 F.2d at 809.

12

At all times, the burden of persuasion to obtain a preliminary injunction or temporary restraining order remains with the plaintiff as to each of the four required elements. Specifically, a plaintiff must establish: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest.[62] If a plaintiff fails to meet his burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting a preliminary injunction.[63]

If the above recommendation to dismiss this matter as frivolous pursuant to 28 U.S.C. §§ 1915(e) and 1915A is adopted, then any request for injunction in this case fails because Shokr has failed to state any cognizable federal claim, and therefore, Plaintiff does not have any likelihood of success on the merits of any request for injunctive relief he may bring related to the instant complaint. Accordingly, if the above recommendation is adopted, the "Motion for TRO"[64] should be denied, and the Motion[65] requesting a ruling on the Motion for TRO should be denied as moot.

## RECOMMENDATION

**IT IS RECOMMENDED** that this Court decline the exercise of supplemental jurisdiction over Simon Shokr's potential state law claims, that his federal claims be **DISMISSED WITH PREJUDICE** as legally frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A, with the exception of Shokr's claims based on

---

[62] See *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008).
[63] *See Roho, Inc. v. Marquis*, 902 F.2d 356, 261 (5th Cir. 1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that the plaintiff failed to show a substantial likelihood of success on the merits).
[64] R. Doc. 3. Further, the Motion for TRO seeks immediate release, which as explained above is inappropriate and relief that cannot be awarded by this court at this juncture.
[65] R. Doc. 5.

infringement of his religious freedom contained within R. Doc. 6, which should be **DISMISSED WITHOUT PREJUDICE** for failure of Shokr to exhaust administrative remedies.

**IT IS FURTHER RECOMMENDED** that the Motion for TRO[66] filed by Simon Shokr be **DENIED** and that the Motion requesting a ruling on the Motion for TRO[67] be **DENIED AS MOOT.**

Signed in Baton Rouge, Louisiana, on December 14, 2020.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[66] R. Doc. 3.
[67] R. Doc. 5.